# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ISAIAH C. HAMBURGER,         )
                                     )

        Petitioner,             )
                                     )

v.                                )         **Case No. CIV-13-921-F**
                                     )

JOE M. ALLBAUGH, Director,      )
                                     )

        Respondent.[1]          )

## REPORT AND RECOMMENDATION

Petitioner Isaiah C. Hamburger, a state prisoner appearing through counsel, has filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, challenging the constitutionality of his criminal conviction by the State of Oklahoma. *See* Pet. (Doc. No. 1). Respondent filed a Response (Doc. No. 13), and Petitioner filed a Reply (Doc. No. 18). United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. As outlined herein, the undersigned recommends that the Petition be denied.

### I.    Relevant Case History and Issues Presented

On June 28, 2009, Petitioner's niece, four-year-old J.H., played and spent the night at her grandparents' house along with several relatives, including Petitioner. Vol. V Trial Tr. 39-48 (*State v. Hamburger*, No. CF-2009-1406 (Cleveland Cnty. Dist. Ct. Dec. 6-10,

---

[1] Because Petitioner is incarcerated at a privately operated correctional facility, the current interim Director of the Oklahoma Department of Corrections is hereby substituted as Respondent in this proceeding. *See* R. 2(a), 12, R. Governing § 2254 Cases in U.S. Dist. Cts.; Fed. R. Civ. P. 25(d), 81(a)(4); *Director's Office*, Okla. Dep't of Corr., http://www.ok.gov/doc/Organization/Director's_Office (last visited May 18, 2016).

2010)) (Doc. No. 15) (conventionally filed). Approximately one week later, J.H. reported to other relatives that Petitioner "showed [her] his pee-pee" and "makes her do yucky things," including wanting her to "put his pee-pee in [her] mouth." Vol. III Trial Tr. 12, 41, 42-43.

Petitioner ultimately was charged with two felony counts of committing Lewd Acts with a Child under title 21, section 1123(A)(4) of the Oklahoma Statutes. Vol. I Trial Tr. 40; Am. Info. (Doc. No. 13-10, at 1) at 1. On December 10, 2010, following a jury trial in Cleveland County District Court, Petitioner was convicted on one count and acquitted on the other. *See State v. Hamburger*, No. CF-2009-1406 (Cleveland Cnty. Dist. Ct.) (docket entries of Dec. 10, 2010);[2] OCCA Summ. Op. (Doc. No. 13-5) at 1 n.1.[3] In accordance with the jury's recommendation, Petitioner was sentenced to thirty-three years' imprisonment. OCCA Summ. Op. at 1; J. & Sentence (Doc. No. 13-1) at 1.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). *See Hamburger v. State*, No. F-2011-164 (Okla. Crim. App.); OCCA Summ. Op. at 1. On May 1, 2012, the OCCA affirmed Petitioner's conviction and sentence. *See* OCCA Summ. Op. at 8. Petitioner subsequently filed a petition for rehearing and request to recall the appellate court's mandate, which the OCCA denied. *See* Doc. Nos. 13-6, 13-7.

---

[2] The dockets for Petitioner's state-court proceedings are publicly available through http://www.oscn.net.

[3] References to documents filed electronically in this Court use the page numbers assigned by the Court's electronic filing system.

Petitioner then filed this federal habeas action, asserting the same seven grounds that were raised as Propositions I through VII in his direct appeal. *See* Pet. at 5, 11, 16; OCCA Summ. Op. at 1-2. Respondent concedes that Petitioner's claims are timely and that Petitioner exhausted his state-court remedies with respect to the grounds raised in the Petition. *See* Resp't's Resp. (Doc. No. 13) at 2; 28 U.S.C. §§ 2244(d), 2254(b)(1)(A).

## II.   Standard of Review

The Tenth Circuit has summarized the standard of review for evaluating state-court determinations that have been challenged in federal court through a 28 U.S.C. § 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.
>
> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted).  Pursuant to AEDPA, factual determinations made by a state court are presumptively correct and may be rebutted only by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## III.  Analysis

### A. Ground One: Admission of Videotaped Interview of Victim

In Ground One, Petitioner argues that he was denied a fair trial because the trial court admitted a videotaped forensic interview of J.H. in which the interviewer failed to follow accepted protocols, thus rendering the victim's statements unreliable.  *See* Pet. at 5-7; Pet'r's Reply (Doc. No. 18) at 4-7.

#### 1. Background

In November 2010, the State filed notice of its intent to offer J.H.'s prior statements into evidence at trial.  *See* Mot. Hr'g Tr. 5 (*State v. Hamburger*, No. CF-2009-1406 (Cleveland Cnty. Dist. Ct. Dec. 2, 2010)) (Doc. No. 15).  The trial court, pursuant to title 12, section 2803.1(A)(1) of the Oklahoma Statutes, held a hearing regarding the admissibility of J.H.'s statements—including those reflected in the video of a forensic interview of J.H. conducted in July 2009—prior to admitting them at trial.  *See* Mot. Hr'g Tr. 6-37, 39-62; Vol. I Trial Tr. 5; Okla. Stat. tit. 12, § 2803.1 (2001 & Supp. 2008).  The trial court, after reviewing the video but without issuing specific findings as to the reliability of the statements, allowed the videotaped interview to be admitted into

evidence, subject to cross-examination as to the means and method of the interviewer. Vol. I Trial Tr. 5; Vol. IV Trial Tr. 23. Petitioner, through his trial counsel, argued against admission of J.H.'s recorded statements at the pretrial hearing and, at trial, renewed his objection to admission of the interview of J.H. *See* Mot. Hr'g Tr. 6, 60-62; Vol. IV Trial Tr. 22-23.

On direct appeal, Petitioner argued that the trial court's admission of the videotaped interview constituted reversible error and violated Petitioner's right to due process because the statements therein lacked sufficient indicia of reliability as required by section 2803.1. Pet'r's Appellate Br. (Doc. No. 13-2) at 18-23; OCCA Summ. Op. at 1. The OCCA rejected this argument, stating:

> [T]he trial court did not abuse its discretion in admitting the victim's videotaped forensic interview under [Okla. Stat. tit. 12, § 2803.1]. A hearsay statement of a child under 13, describing an act of sexual abuse, is admissible if (1) after a hearing the court finds that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability to render it inherently trustworthy, and (2) the child either (a) testifies or (b) is unavailable to testify. [Okla. Stat. tit. 12, § 2803.1.] In determining trustworthiness, the court considers (a) the spontaneity and consistent repetition of the statements; (b) the mental state of the declarant; (c) whether the terminology used is unexpected for a child of similar age; and (d) if there is a lack of motive to fabricate. *Id.* After a lengthy hearing, the trial court ruled that the statement was admissible. This ruling failed to describe the specific facts and circumstances supporting the court's finding. However, this omission does not require relief if the facts and circumstances of the hearing show that the ruling was not an abuse of discretion. The record amply supports the trial court's decision.
>
> Hamburger argues in Proposition I that the forensic interviewer's failure to follow standard interview protocols rendered the videotaped statement untrustworthy under § 2803.1, and thus inadmissible. No law supports this claim. While the statute sets out criteria for trustworthiness, necessary for admission of the statement, the statute does not specify that

any particular form of questioning must be used to satisfy those criteria. The trial court must examine the evidence presented at the hearing and find that the circumstances surrounding the making of the statement satisfy the admissibility requirements of the statute. Once that determination is made, the question of professional protocols goes to the statement's weight and credibility.

OCCA Summ. Op. at 2-3 (citations omitted).

### 2. Discussion

To the extent Petitioner argues that the videotaped interview was not properly admissible under Oklahoma's child hearsay statute, he has not established an entitlement to relief: "federal habeas corpus relief does not lie for errors of state law" such as violation of a state's evidence code. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted); *see, e.g.*, *Durbin v. Province*, 448 F. App'x 785, 787 (10th Cir. 2011) ("It is not the responsibility of a federal habeas court to cure errors from the state court concerning state law."). The Court "will only consider state law evidentiary questions on habeas 'if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Durbin*, 448 F. App'x at 787 (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002)). *See generally Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (noting that a state-court evidentiary ruling generally is "not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" (internal quotation marks omitted)).

To this point, Petitioner argues that admission of J.H.'s interview statements denied him the requisite due process under the Fourteenth Amendment. *See* Pet'r's

Reply at 4-7.  According to Petitioner, the interviewer, Jessica Taylor, failed to follow the standard protocol of "go[ing] through the rules relating to telling the truth and only answering questions to which the answer is known" when interviewing J.H., which resulted in "prompted" responses "made under circumstances that call their reliability into question."  *Id.* at 5-7 (citing Pet'r's Appellate Br. at 20); Pet. at 5.

Petitioner has not shown that the trial court's admission of the videotaped interview rendered his trial fundamentally unfair.  As a threshold matter, the Tenth Circuit has indicated that a trial court's mere "failure to explain the basis for reliability" of a child's statements as contemplated under section 2803.1 does not by itself constitute a due process violation.  *See Durbin*, 448 F. App'x at 787; *cf. Kolosha v. Bear*, No. 12-CV-465, 2015 WL 4666045, at *12-13 (N.D. Okla. Aug. 6, 2015) (rejecting argument that appellate counsel was ineffective for failing to raise the trial court's lack of a specific finding on children's hearsay statements under section 2803.1 where the court had held a pretrial "reliability hearing" and the court's omission did not contribute to the verdict), *appeal dismissed*, No. 15-5080, 2016 WL 1444741 (10th Cir. Apr. 13, 2016).

Both parties point to *Idaho v. Wright* as supplying the relevant factors for examining the constitutional impact of J.H.'s out-of-court statements.  *See* Pet'r's Reply at 1 (citing *Wright*, 497 U.S. 805 (1990)); Resp't's Resp. at 7, 10 (same).  In *Wright*, a Sixth Amendment Confrontation Clause case, the Supreme Court held that a child's statements to a pediatrician did not bear sufficient indicia of reliability such that they were properly admissible under the Confrontation Clause.  *See Wright*, 497 U.S. at 809-

27.[4]  The Court enumerated several factors relevant "to whether hearsay statements made by a child witness in child sexual abuse cases are reliable," including: "spontaneity and consistent repetition"; "mental state of the declarant"; "use of terminology unexpected of a child of similar age"; and "lack of motive to fabricate." *Id.* at 821-22.  The Court noted that these factors speak to "whether the child declarant was particularly likely to be telling the truth when the statement was made." *Id.* at 822.  As noted in the OCCA's summary opinion quoted above, section 2803.1 impels consideration of these same factors by the state court to determine "that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy." Okla. Stat. tit. 12, § 2803.1(A); OCCA Summ. Op. at 2-3.

The *Wright* Court upheld the state appellate court's finding of insufficient indicia of reliability for Confrontation Clause purposes where that court had "focused on the suggestive manner in which" the pediatrician had conducted the interview of the child declarant. *Wright*, 497 U.S. at 826.  Here, in contrast to *Wright*, no such lack of reliability is evident from the record.  At the time of the interview, Ms. Taylor worked for

_____

[4] In addressing the Confrontation Clause issue, the Court relied upon *Ohio v. Roberts*, which had held that an unavailable declarant's hearsay statement is admissible only if it bears adequate "indicia of reliability." *See Wright*, 497 U.S. at 814-18; *Roberts*, 448 U.S. 56, 66 (1980).  This aspect of *Wright* is no longer governing law, as *Roberts* has been abrogated by *Crawford v. Washington*, 541 U.S. 36 (1994), which shifted the Confrontation Clause focus from whether a hearsay statement is independently reliable to whether it is testimonial, holding that where testimonial hearsay is concerned and the declarant is absent from trial, admission of such statement is barred by the Confrontation Clause unless the witness is unavailable to testify and the criminal defendant had a prior opportunity for cross-examination. *See Crawford*, 541 U.S. at 68-69.

a children's advocacy center in Norman, Oklahoma. Vol. IV Trial Tr. 7. At the pretrial hearing, Ms. Taylor testified that during the interview she believed that J.H. was able to understand the difference between truth and lying, right and wrong, and fantasy and reality. Mot. Hr'g at 11-12, 34. Ms. Taylor explained that J.H. was able to identify body parts for both genders, and her testimony reflected that J.H. used detailed language in describing what had transpired regarding Petitioner. *See id.* at 12-18. Ms. Taylor testified that she followed the protocol in which she had been trained when questioning J.H. and that J.H.'s statements to her were consistent. *See id.* at 11, 20-21. Ms. Taylor additionally agreed that J.H. used language during the interview that a four-year-old "would not be aware of." *Id.* at 34-35. At trial, Petitioner's counsel cross-examined Ms. Taylor at length regarding the interview. *See* Vol. IV Trial Tr. 36-66, 75-78. Ms. Taylor testified that when conducting forensic interviews, she has no interest in the outcome or in whether the child discloses abuse. *See id.* at 14-15.

The videotaped interview itself shows that J.H. was willing to and did answer Ms. Taylor's questions, although she was occasionally distracted. Resp't's Ex. 11 (Doc. No. 20) (conventionally filed). When J.H. did not know the answer to a question, she stated, "I don't know." *Id.* Although J.H. initially said that nothing had happened to her body, and Ms. Taylor prompted J.H. as to whether she had told anyone that something had happened with her body, J.H. rather than the interviewer was the first person to refer to Petitioner by name. *See id.* J.H. related that Petitioner "shows me his pee-pee," wants her to put her mouth on his "pee-pee," and asks her to do so while they are in the bathroom at her grandmother's house. *See id.* J.H. further stated that Petitioner's "pee-

pee" had black hair on top and that "fake pee-pee" came out of Petitioner's "pee-pee." *Id.* J.H. said she had put his mouth on his "pee-pee," described the "fake pee-pee" as white in color, and told Ms. Taylor that it tasted like "yucky juice." *Id.* Further, J.H. herself testified at trial, by which time she was five years old, and was subject to cross-examination by Petitioner's counsel. *See* Vol. III Trial Tr. 172-203.

For these reasons, as recognized by the OCCA, Petitioner has not shown that his due process rights were violated by admission of J.H.'s out-of-court statements such that the jury's consideration of the videotape rendered his trial fundamentally unfair. The interview itself reflects significant indicia of reliability, e.g., J.H.'s multiple spontaneous descriptions of Petitioner's actions, and Petitioner offers no authority for the proposition that the interviewer's choice of one questioning protocol over another renders the resulting interview inherently unreliable. As such, Petitioner's challenge to Ms. Taylor's interviewing method attacks the weight and credibility of witness testimony, a determination within the province and responsibility of the jury. *See Matthews v. Workman*, 577 F.3d 1175, 1184 (10th Cir. 2009); *cf.* OCCA Summ. Op. at 3 ("[T]he question of professional protocols goes to the statement's weight and credibility.").

Petitioner fails to establish that OCCA's rejection of this claim was unreasonable or contrary to clearly established federal law, or was based upon an unreasonable determination of the facts. Habeas relief should be denied on Ground One. *See* 28 U.S.C. § 2254(d)(1), (2); *Durbin*, 448 F. App'x at 787; OCCA Summ. Op. at 2-3.

## B. Ground Two: Sixth Amendment Confrontation Clause

### 1. Background

As explained above, J.H. answered questions regarding her alleged abuse in the videotaped forensic interview with Ms. Taylor in July 2009, when she was four years old. At the pretrial motion hearing, Ms. Taylor testified and was subjected to cross-examination by Petitioner's counsel regarding the interview with J.H. Following this hearing and the trial court's viewing of the videotape, the trial court admitted its contents into evidence and allowed the State to play the videotape for the jury during its case-in-chief. *See* Mot. Hr'g Tr. 8, 25-36; Vol. I Trial Tr. 5; Vol. IV Trial Tr. 23.

Prior to trial, Petitioner filed a motion seeking to use an alternative impeachment method if difficulties arose during cross-examination of J.H. *See* Pet'r's Mot. (Doc. No. 13-10, at 2-3) at 2-3. The trial court granted this request in part, directing that Petitioner could impeach J.H. through questioning of Ms. Taylor if J.H.'s statements at trial were inconsistent with those of the recorded interview. *See* Mot. Hr'g Tr. 63-65; Vol. I Trial Tr. 5-7. At trial, J.H., by then five years old, testified and was subject to cross-examination by Petitioner. *See* Vol. III Trial Tr. 172-203. Ms. Taylor also testified and was cross-examined. *See* Vol. IV Trial Tr. 4-78.

In Ground Two, Petitioner argues that admission of the videotaped interview of J.H. violated his right under the Sixth Amendment to confront J.H. as a witness. Petitioner asserts that because J.H. "was not a competent witness under state law," Petitioner was unable to effectively cross-examine J.H. at trial regarding her prior

inconsistent statements.  Pet. at 7-8; Pet'r's Reply at 7-8 (citing *Crawford*, 541 U.S. 36;

*Davis v. Alaska*, 415 U.S. 308 (1974)).

Petitioner raised this claim of error on direct appeal to the OCCA, which denied

relief:

> We find in Proposition II that Hamburger's right to confrontation was not violated by admission of the child victim's hearsay statement under § 2803.1 and there was no plain error in admission of the statement.  Such statements may be admitted under § 2803.1 without violating a defendant's constitutional right to confront witnesses.  *Folks* [*v. State*, 207 P.3d 379, 382-83 (Okla. Crim. App. 2008)].  Relying on Oklahoma Court of Civil Appeals caselaw, Hamburger argues that the victim must be a competent witness at the time of the forensic interview, and further argues that, as this witness was not then competent, the statement should not have been admitted.  This Court need not discuss the Court of Civil Appeals'[] interpretation of § 2803.1.  The record does not support Hamburger's claim that the victim was not competent at the time of the forensic interview.  She was presumed to be a competent witness, and the record showed that, at the time of the forensic interview, she could tell truth from a lie, tell fact from fiction, and had personal knowledge of Hamburger's actions.  Hamburger argues that the inconsistencies themselves created a confrontation clause problem.  The Confrontation Clause and *Crawford* guarantee a defendant the right to confront the witnesses against him, and restrict the use of testimonial hearsay.  *Crawford*[, 541 U.S. at 68].  They do not guarantee that a defendant must successfully be able to impeach a witness he confronts.

OCCA Summ. Op. at 3-4 (citation omitted).

### 2. *Discussion*

The Sixth Amendment provides that a criminal defendant has the right "to be

confronted with the witnesses against him."  U.S. Const. amend. VI.  In *Delaware v. Van

Arsdall*, the Supreme Court discussed the guarantees afforded to a criminal defendant by

the Confrontation Clause:

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, "means more than being allowed to confront the witness physically." Indeed, "the main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*."

*Van Arsdall*, 475 U.S. 673, 678-79 (1986) (alteration and citation omitted) (quoting *Davis*, 415 U.S. at 315-16). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

Here, Petitioner indisputably had an opportunity for cross-examination of both J.H. and her interviewer. Pursuant to *Van Arsdall*, *Davis*, and *Fensterer*, this is all the Confrontation Clause requires. *See Van Arsdall*, 475 U.S. at 678-79; *Davis*, 415 U.S. at 315-16; *Fensterer*, 474 U.S. at 20. Petitioner offers no "clearly established Federal law" establishing that he is entitled to cross-examination that he personally finds "effective[]" or "meaningful." *See* Pet'r's Reply at 7, 8; *cf. Van Arsdall*, 475 U.S. at 679 (noting that trial judges retain wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination). Accordingly, Petitioner's arguments do not establish that the OCCA's decision was contrary to or an unreasonable application of such federal precedent, as required for federal habeas relief to be granted. *See* 28 U.S.C. § 2254(d)(1); *House v. Hatch*, 527 F.3d 1010, 1017 (10th Cir. 2008) ("[W]ithout clearly established federal law, a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law.").

To the extent Petitioner's claim is based upon J.H.'s perceived incompetence as a state-court witness under Oklahoma law due to her age and faulty memory, such competence (or lack thereof) is a matter determined by reference to state evidentiary law and therefore is not cognizable in a federal habeas action. *See* Pet'r's Reply at 7-8; Okla. Stat. tit. 12, § 2601 (prescribing that "[e]very person is competent to be a witness" except as otherwise provided by the Oklahoma Evidence Code); *Gilson v. Sirmons*, No. CIV-01-1311-C, 2006 WL 2320682, at *28 (W.D. Okla. Aug. 9, 2006) (holding that the OCCA's findings as to whether children were competent to testify were "based on factual determinations and matters of state evidentiary law"), *aff'd*, 520 F.3d 1196 (10th Cir. 2008). Petitioner's primary support for the related proposition that the OCCA should have equated a witness's incompetence at the time the declaration is made with that witness's unavailability at trial appears in his state appellate brief, where he cited an intermediate state civil appellate court decision that itself relied only upon other states' law in so finding. *See* Pet'r's Appellate Br. at 24 (citing *In re A.D.B.*, 778 P.2d 945 (Okla. Civ. App. 1989)). And although Petitioner broadly represents that "*Crawford* holds that a competent witness is a prerequisite to a meaningful opportunity to cross-examine," this proposition is not supported by specific citation, the term "competent witness" appears nowhere in that decision, and Petitioner cites no supporting authority to this Court for the proposition that a witness's age or alleged failure to testify consistently renders the witness "unavailable" within the meaning contemplated by *Crawford*. *See* Pet'r's Reply at 8; *Crawford*, 541 U.S. at 38-68; *cf. Wright*, 497 U.S. at 824 (rejecting the argument that a child's out-of-court statements are presumptively unreliable because she

was found to be incompetent to testify at trial; noting that "the Confrontation Clause does not erect a *per se* rule barring the admission of prior statements of a declarant who is unable to communicate to the jury at the time of trial").

For all of these reasons, the OCCA's rejection of Petitioner's Confrontation Clause claim was neither an unreasonable application of nor contrary to clearly established federal law. *See* OCCA Summ. Op. at 3-4; 28 U.S.C. § 2254(d)(1); *Van Arsdall*, 475 U.S. at 678-79; *Fensterer*, 474 U.S. at 20; *Davis*, 415 U.S. at 315-16. Petitioner is not entitled to relief on Ground Two.

### C. Ground Three: Crimes Charged Against Petitioner

Petitioner claims that, rather than being charged with Lewd Acts with a Child under title 21, section 1123(A)(4) of the Oklahoma Statutes, he should have been charged "with the more specific [offense] of Forcible Oral Sodomy," under title 21, section 888 of the Oklahoma Statutes. Specifically, Petitioner argues that the State's improper use of the more general section 1123 violated Oklahoma law and his due process rights. Pet. at 8-10; Pet'r's Reply at 8-10.

As applicable in this matter, the crime of Forcible Oral Sodomy offers a lesser punishment range than does Lewd Acts with a Child. *See* Okla. Stat. tit. 21, § 1123 (2001 & Supp. 2008) (prescribing a minimum sentence of 25 years if victim is under twelve years of age); *id.* § 888 (2001 & Supp. 2008) (prescribing a maximum sentence of 20 years for first-time violation). At trial, the jurors were instructed as to the elements of Lewd Acts with a Child. *See* Trial Instr. No. 22 (Doc. No. 13-10, at 4) at 4. The record before this Court does not reflect that Petitioner objected before or during trial to being

charged with Lewd Acts with a Child. As noted, Petitioner was found guilty of one count

of Lewd Acts with a Child. *See* J. & Sentence at 1; OCCA Summ. Op. at 1 n.1.

The OCCA rejected this claim on appeal, stating:

> We find in Proposition III that there was no plain error in charging Hamburger with lewd molestation rather than forcible oral sodomy. Where there is a conflict between statutes, and a general and specific statute both make criminal the same act, the specific statute controls. *State v. Hall*, 2008 OK CR 15, ¶ 29, 185 P.3d 397, 404-05. However, prosecutors have broad discretion in determining an appropriate charge based on the facts of the case. *State v. Franks*, 2006 OK CR 31, ¶ 6, 140 P.3d 557, 558-59. Where the facts squarely support the more specific charge and the Legislature clearly intends particular crimes to be charged under that statute, the more specific statute controls over a prosecutor's charging discretion. *Franks*, 2006 OK CR 31, ¶ 7, 140 P.3d at 559. The law and facts here do not support Hamburger's claim that forcible oral sodomy is the more specific charge. The elements of lewd molestation and forcible oral sodomy are similar, [Okla. Stat. tit. 21, § 1123; Okla. Unif. Crim. Jury Instr. No. 4-129 (2d ed. 1996)]; [Okla. Stat. tit. 21, § 888; Okla. Unif. Crim. Jury Instr. No. 4-128 (2d ed. 1996)]. Hamburger argues that forcible oral sodomy is the more appropriate specific crime because it prohibits a defendant from penetrating a victim[']s mouth with his penis when the victim is under sixteen years of age and he is over eighteen. A key distinction, in this case, between the two crimes is the special punishment provision in § 1123—if the victim is under twelve years of age, the minimum sentence for a first offense is twenty-five (25) years. [Okla. Stat. tit. 21, § 1123(A).] The lewd molestation statute is thus specifically tailored to crimes involving children under the age of twelve—that is, young children such as the victim in this case. Because Hamburger's victim was a young child, the State properly charged him with the crime specifically referring to child victims.

OCCA Summ. Op. at 4-5.

"[W]hether a [state] prosecutor must proceed under one statute rather than another

is a matter of state law." *Haney v. Addison*, 275 F. App'x 802, 805 (10th Cir. 2008).

"[R]elief is available under § 2254 only for a violation of federal law." *Id.* (citing 28

U.S.C. § 2254(a)). Petitioner thus cannot prevail upon his habeas claim unless he shows

that the trial court's permitting the State to prosecute him for Lewd Acts with a Child rather than Forcible Oral Sodomy "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995); *accord Revilla*, 283 F.3d at 1212; *see also Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (noting that the OCCA's application of plain-error review was an adjudication on the merits to which deference was owed under § 2254(d)).

This standard is not met here. Petitioner rests his claim on *State v. Franks*, in which the OCCA held that an Oklahoma prosecutor's "broad discretion in deciding what charges to bring" is circumscribed by the common-law principle that "specific statutes control general ones," which "comes into play when the charges brought under a more general statute 'thwart' the legislative intent in enacting the more specific one." *Franks*, 140 P.3d at 558-59. Petitioner argues that the prosecutor ignored legislative intent in charging him with Lewd Acts with a Child and that this violation of state law amounted to a federal due process violation because "the State essentially created a liberty interest under state law that channeled the discretion of the prosecutor in these cases and, under *Franks*, prevents the State from doing what it did here, which is to seek a greater punishment under a more general statute." Pet'r's Reply at 10 (citing *Hicks v. Oklahoma*, 447 U.S. 343 (1980), for the proposition that "state created liberty interests cannot be arbitrarily denied under the Fourteenth Amendment").

Even assuming an error of state law in charging Petitioner with Lewd Acts with a Child, and that the OCCA erred in rejecting Petitioner's argument that Forcible Oral Sodomy is the "more specific statute," Petitioner cannot show any error under *federal* law

in the State's prosecutor choosing to proceed under one statute rather than another (or in the trial court's permitting the exercise of such discretion). *See generally Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir. 1999) ("[T]he deprivation occasioned by the state's failure to follow its own law must be 'arbitrary in the constitutional sense'; that is, it must shock the judicial conscience." (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992))). It is long-established that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Although the prosecutor may not rely upon unjustifiable or discriminatory standards in exercising his or her discretion, the prosecutor's "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456. Thus, this Court and others have rejected habeas claims premised upon a state prosecutor's exercise of discretion in selecting the charges to bring against a criminal defendant. *See, e.g.*, *Ledford v. Jones*, No. CIV-06-460-R, 2007 WL 427703, at *1, *18-19 (W.D. Okla. Feb. 6, 2007), *appeal dismissed*, 299 F. App'x 797 (10th Cir. 2008); *cf. Moeller v. Att'y Gen.*, 838 F.2d 309, 310-11 (8th Cir. 1988) (stating that "the writ of habeas corpus does not lie to determine" "whether prosecutorial discretion was prudently exercised").

Petitioner cites no authority establishing that the state-law limitation on prosecutorial discretion discussed in *Franks* "created a liberty interest" that entitled Petitioner to be prosecuted under whichever statute carried the shorter possible sentence.

Such a proposition runs counter to federal courts' longstanding acceptance of punishment as a permissible factor for consideration by the prosecutor. *See United States v. Batchelder,* 442 U.S. 114, 125 (1979) ("The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause."); *accord United States v. Anderson*, 940 F.2d 593, 596 (10th Cir. 1991); *see also United States v. Parsons*, 967 F.2d 452, 456 (10th Cir. 1992) ("Prosecutors are not required to prosecute under another statute perhaps covering the same wrongful acts merely because the other statute imposes a lesser penalty."); *cf. Haney*, 275 F. App'x at 805 (rejecting habeas petitioner's argument that he was improperly charged under section 1123 rather than a more specific statute with a lesser maximum sentence).

Petitioner has failed to show that he was denied a fundamentally fair trial on this basis, such that having been charged with and convicted of Lewd Acts with a Child "shock[s] the judicial conscience." *See Maes*, 46 F.3d at 984; *Aycox*, 196 F.3d at 1180; *Dodd*, 753 F.3d at 991 (noting that "failure to object, although not dispositive, is relevant to our assessment of fundamental fairness" (internal quotation marks omitted)). For these same reasons, Petitioner cannot show that the OCCA's denial of relief on this claim was an unreasonable application of or contrary to clearly established federal law. *See* OCCA Summ. Op. at 4-5; *Bordenkircher*, 434 U.S. at 364; *Batchelder*, 442 U.S. at 125. Petitioner is not entitled to habeas relief on Ground Three.

### D. Ground Four: Jury Instruction on Charged Offenses

Petitioner next argues that the jurors were improperly instructed as to the elements that must be shown to find that Petitioner committed the crime of Lewd Acts with a Child in violation of title 21, section 1123 of the Oklahoma Statutes. According to Petitioner, the instructions given at trial improperly "broadened the elements of the offense" by allowing the jury "to consider two ways in which the crime could have been committed, which violated the specific language of the charging document that alleged a single crime committed in a specific way." Pet. at 10-11; Pet'r's Reply at 10 (citing Pet'r's Appellate Br. at 30-33). Specifically, Petitioner claims that the trial court's Instruction No. 22 deprived him of his right to a unanimous jury verdict and violated his due process right to notice of and conviction on each element of the charged offense beyond a reasonable doubt. Pet'r's Appellate Br. at 30-33.

### 1. Background

As noted above, the Petitioner was charged with two counts of Lewd Acts with a Child. *See* Am. Info. at 1. The Amended Information charged in the first count that

> on or between the 28th day of June, 2009, and the 29th day of June, 2009, said defendant did unlawfully, willfully, knowingly and intentionally force J.J.H. . . . , a minor child under the age of sixteen (16) years, to put his penis into the victim's mouth, and the defendant was more than eighteen (18) years of age and was at least three (3) years older than J.J.H., contrary to the form of the Statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma.

*Id.* The second count, upon which Petitioner was acquitted, set forth the same charge but with a different date range. *See id.*

The statutory provision cited in the charging document, section 1123(A)(4), provides that it is a felony for a person to "knowingly and intentionally" "[i]n any manner

lewdly or lasciviously look upon, touch, maul, or feel the body or private parts of any

child under sixteen (16) years of age in any indecent manner or in any manner relating to

sexual matters or sexual interest." Okla. Stat. tit. 21, § 1123(A)(4). The remainder of

section 1123(A) outlines other methods by which a person can commit "[l]ewd or

indecent proposals or acts as to child under 16 or person believed to be under 16—

[s]exual battery." *Id.* § 1123, 1123(A)(1)-(5). An Oklahoma Uniform Criminal Jury

Instruction for section 1123(A) provides seven alternative methods by which a defendant

can be found guilty of violating that statute. *Compare* Okla. Unif. Crim. Jury Instr. No.

4-129, *with* Okla. Stat. tit. 21, § 1123(A)(1)-(5).

Trial Instruction No. 22 tracked the language of the uniform instruction, adapted

two of these alternative methods, and provided that the State must prove each of the

following elements beyond a reasonable doubt in order for Petitioner to be convicted:

> <u>First</u>, the Defendant was at least three years older than the victim;
> <u>Second</u>, who knowingly and intentionally;
> <u>Third</u>, made any oral lewd or indecent proposal;
> <u>Fourth</u>, to any child under twelve years of age;
> <u>Fifth</u>, for the child to have unlawful sexual relations/intercourse with
> any person.

OR

> <u>Third</u>, in a lewd and lascivious manner;
> <u>Fourth</u>, for the purpose of sexual gratification;
> <u>Fifth</u>, forced/required any child under twelve years of age;
> <u>Sixth</u>, to touch/feel the body/private parts of another person.

Trial Instr. No. 22.

Petitioner does not argue that there was insufficient evidence to convict him of

either of these alternative means of violating section 1123; nor does he argue that section

1123 violates due process or is otherwise unconstitutional. *See* Pet'r's Appellate Br. at 30-33. *See generally In re Winship*, 397 U.S. 358, 364 (1970); *Schad v. Arizona*, 501 U.S. 624, 632 (1991); *City of Chicago v. Morales*, 527 U.S. 41, 56-60 (1999). Instead, Petitioner contends that allowing the jury two options by which it could find him guilty violated his right to a unanimous jury verdict and failed to provide him the requisite notice of the charge leveled against him. *See* Pet. at 10; Pet'r's Appellate Br. at 30-33.[5]

When Petitioner raised this claim on direct appeal, the OCCA denied it on the merits:

> We find in Proposition IV that the trial court did not abuse its discretion in instructing the jury on lewd molestation. The jury must be instructed on each element of the crime. *Pinkley v. State*, 2002 OK CR 26, ¶ 7, 49 P.3d 756, 758-59; *In re Winship*, 397 U.S. [at 364]. In determining whether a defendant has notice of the charges against him, this Court will look to the language of the Information, and all the material that was made available to a defendant at preliminary hearing or through discovery. Lewd molestation may be charged in more than one way. Jury Instruction 22, on the elements of lewd molestation, included two alternatives, both of which were supported by evidence. The Information and material presented at preliminary hearing put Hamburger on notice that the victim had accused him, at various times, of both (a) wanting her to put his penis in her mouth although she did not comply, and (b) requiring her to do so. The instruction follows the disjunctive language of § 1123, defining the crime of lewd molestation. As the instruction contains substantially similar language to the statute, and Hamburger was on notice of the crime against which he must defend, the instruction was not erroneous. Because the instruction accurately stated the applicable law, and Hamburger was on notice of the charge as instructed, the fact that the statute and instruction are worded in the alternative did not violate Hamburger's due process rights. *Schad*[, 501 U.S. at 632].

OCCA Summ. Op. at 5-6 (citations omitted).

---

[5] According to Petitioner's Appellate Brief, defense counsel argued at trial that providing these options to the jury was "confusing." *See* Pet'r's Appellate Br. at 32.

## 2. Discussion

### a. Unanimous Jury Claim

Petitioner has not shown that the trial court's jury instructions, and specifically Instruction No. 22, violated Petitioner's due process rights by presenting disjunctively, as to one charge, multiple means by which the charge may be met and not requiring a separate determination as to each of these means. In *Griffin v. United States*, the Supreme Court considered a guilty verdict made upon jury instructions that allowed a conviction on a single count if it was proved that the defendant either conspired to defraud the Internal Revenue Service *or* conspired to defraud the Drug Enforcement Agency. *See Griffin*, 502 U.S. 46, 47-48 (1991). The Supreme Court rejected the defendant's argument that, because the evidence was insufficient as to one of the articulated ways of committing the crime at issue, the jury's general verdict of guilty denied her due process. *See id.* at 56-60 (holding that when an offense can be committed by two or more means, a general guilty verdict will be sustained if there is sufficient evidence to support a guilty finding on one of those means, even if the evidence is insufficient to support a guilty finding on any of the alternative means); *see also Vann v. Broaddus*, 349 F. App'x 265, 266-67 (10th Cir. 2009) (denying certificate of appealability to habeas petitioner who argued evidence was insufficient to support one of two means presented to jury for committing crime of child abuse involving serious bodily injury, explaining "the jury's general verdict comports with due process as long as the evidence supports *at least one* of the alternative theories presented at trial."); *Schad v. Arizona*, 501 U.S. at 649 (Scalia, J., concurring) ("[I]t has long been the general rule that

when a single crime can be committed in various ways, jurors need not agree upon the mode of commission."); *cf. McDonald v. City of Chicago*, 561 U.S. 742, 765 n.14 (2010) ("[A]lthough the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials.").

Petitioner here does not argue that, due to a lack of sufficient evidence, it was improper for him to have been convicted on one of the alternative means cited in Instruction No. 22. Rather, Petitioner simply argues that the failure to require separate determinations from the jury as to both of the alternative means of satisfying the charge necessarily results in a non-unanimous jury verdict. This aspect of the general verdicts cited in the authorities above has not been found to create a denial of due process, however. *Cf. Schad*, 501 U.S. at 645 (majority opinion) (upholding the use of instructing as to alternative means of committing one offense and explaining that that "the jury's options" in that case "did not fall beyond the constitutional bounds of fundamental fairness and rationality"). In accordance with these authorities, the OCCA properly rejected Petitioner's claim that the jury receiving alternative methods by which they could find Petitioner guilty of Lewd Acts with a Child violated his right to due process under the Fourteenth Amendment. Petitioner has not shown that this rejection was contrary to or an unreasonable application of relevant Supreme Court holdings, and therefore he is not entitled to habeas relief on this claim. *See* OCCA Summ. Op. at 5-6; 28 U.S.C. § 2254(d)(1).

### b. Notice of the Charged Offenses

Petitioner further contends that he was not provided notice of the charge against him as required by the Due Process Clause. Petitioner's argument, while vague, appears to be that offering the jury alternative means by which Petitioner could be found guilty of Lewd Acts with a Child improperly broadened the scope of the State's allegation against him beyond what was stated in the Amended Information. *See* Pet'r's Reply at 10; Pet'r's Appellate Br. at 30-33.

Petitioner is correct that the Due Process Clause guaranteed him adequate notice of each crime alleged against him. *See Morales*, 527 U.S. at 56-57; *Vann*, 349 F. App'x at 267. Petitioner's attack on the scope of the Amended Information, however, does not support a claim for federal habeas relief. The adequacy of a charging document under Oklahoma statute "is a question of state law," which a federal habeas court "has no power to address." *Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002) (citing Okla. Stat. tit. 22, § 401(2)). "Rather, this court may grant habeas relief only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution." *Id.* The Tenth Circuit has indicated that the question of whether a defendant received "sufficient notice of the charge against him" as required by the Due Process Clause is answered by consideration of the totality of the information available to the defendant. *See id.* at 1226-28 (considering state-court charging document, evidence presented at preliminary hearing, and evidence available through discovery in rejecting habeas due process claim based upon an insufficient charging document).

Petitioner has not demonstrated that the OCCA's holding that he received adequate notice was unreasonable or contrary to clearly established federal law, or that the holding was based upon an unreasonable determination of the facts. While the Amended Information cited paragraph (A)(4) of section 1123—i.e., the statutory provision prohibiting looking upon, touching, mauling, or feeling the body or private parts of a child—Petitioner offers no challenge or disagreement with the OCCA's specific conclusion that such charging document, when considered together with the material presented at his preliminary hearing, was sufficient to put Petitioner on notice that J.H. had accused him of "both (a) wanting [J.H.] to put [Petitioner's] penis in her mouth although she did not comply, and (b) requiring her to do so." OCCA Summ. Op. at 5-6; *see State v. Hamburger*, No. CF-2009-1406 (docket entry of Mar. 3, 2010). Prior to trial, Petitioner heard Ms. Taylor testify that J.H. had told her that Petitioner would "ask [J.H.] to put her mouth on his pee-pee" and heard J.H.'s cousin testify, "[J.H.] said, He wanted me to put his pee-pee in my mouth." Mot. Hr'g at 13, 42. Such accusations of "ask" and "wanted" clearly implicate an alternative and express means of violating section 1123(A): the making of a lewd or indecent proposal to a child. *See* Okla. Stat. tit. 21, § 1123(A)(1), (3), (5).[6]

Having been presented with a charge citing section 1123(A)(4), and testimony prior to trial accusing him of making requests to J.H. regarding oral-genital contact,

---

[6] The undersigned also notes that, while not relevant to notice, the testimony and evidence presented at trial supported giving an instruction regarding a lewd or indecent proposal to a child as a possible means of violating the relevant statute. *See, e.g.*, Vol. III Trial Tr. 187 (J.H. testifying that Petitioner "asked" her to put her mouth on his penis and said to her, "Come on, do it").

Petitioner could reasonably be found to have sufficient notice that the charge encompassed that alternative means of violating section 1123(A), such that the jury was properly instructed on these alternatives.  Notably, Petitioner does not specifically argue that he was unable to defend against the State's alternative theory of liability due to lack of such notice or contend that his Sixth Amendment rights were violated in this respect. *See Morales*, 527 U.S. at 56-60; *Sallahdin*, 275 F.3d at 1227.

In light of these circumstances, Petitioner cannot show that the OCCA's ruling on his notice claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (noting that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law" (internal quotation marks omitted)); 28 U.S.C. § 2254(d)(1); *Vann*, 349 F. App'x at 266-67 (rejecting habeas claim where petitioner argued that he had received insufficient notice of one of the prosecution's theories of liability of child abuse where the relevant statute set forth alternative means of violation, including the disputed theory).  And Petitioner does not claim or demonstrate that the OCCA's rejection of this claim is based upon an unreasonable determination of the facts in light of the evidence before the state courts. *See* 28 U.S.C. § 2254(d)(2).  Petitioner is not entitled to habeas relief on this claim.

### E.  Ground Five: The State's Rebuttal Evidence

At trial, Petitioner took the stand and testified in his own defense.  *See* Vol. V Trial Tr. 18-123.  During recross-examination by the State, the following transpired:

      [STATE]:             Do you have a girlfriend?

| [PETITIONER]: | Not right now. |
|---|---|
| [STATE]: | Did you in June 2009? |
| [PETITIONER]: | Yes. |
| [STATE]: | What was her name? |
| [PETITIONER]: | Her name was Katy Anderson. |

. . . .

| [STATE]: | Was she a serious girlfriend? |
|---|---|
| [PETITIONER]: | Not at that point, no. |
| [STATE]: | How long did you date her? |
| [PETITIONER]: | A couple of months. |

. . . .

| [STATE]: | Did it get serious? |
|---|---|
| [PETITIONER]: | It got a little bit more serious, but nothing—I never brought her home to meet my parents or anything. |

*Id.* 120, 122. Defense counsel did not object at the time these questions were being presented. *See id.* 120-22; Pet'r's Appellate Br. at 37.

After the defense rested, the State announced that it wished to call Katy Anderson to the stand to testify as a rebuttal witness. Vol. VI Trial Tr. 42. Defense counsel objected that her testimony would be vague and not relevant for impeachment purposes. *Id.* at 43. The trial court allowed Ms. Anderson to testify, finding that "it goes directly to [Petitioner's] credibility." *Id.* at 44. On the stand, Ms. Anderson admitted she was friends with Petitioner but denied ever having dated Petitioner, having a sexual relationship with Petitioner, or being in a situation that Petitioner could have perceived as them dating each other. Vol. VI Trial Tr. 44-46, 48, 50.

Petitioner asserts that the trial court erred in allowing Ms. Anderson to testify because this questioning concerned an irrelevant collateral matter and thus did not

constitute proper rebuttal evidence. Pet. at 16; Pet'r's Appellate Br. at 34-37. The OCCA rejected this argument, holding that the trial court "correctly ruled that this testimony directly bore on Hamburger's credibility" and, citing state-law authority, concluded that Ms. Anderson's testimony fit the definition of proper rebuttal evidence "exactly." OCCA Summ. Op. at 6-7.

In his Reply to this Court, Petitioner expressly concedes that Ground Five "lies on state law grounds, and is therefore not cognizable in federal habeas." Pet'r's Reply at 11; *see McGuire*, 502 U.S. at 67-68. Further, the admission of Ms. Anderson's testimony was not "'so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Durbin*, 448 F. App'x at 787 (quoting *Revilla*, 283 F.3d at 1212). "[T]here is nothing so unfair as to violate due process in permitting the government to put on a rebuttal witness to challenge defense testimony that could not be anticipated before trial." *Davis v. Workman*, 695 F.3d 1060, 1078 (10th Cir. 2012); *cf. United States v. Troutman*, 814 F.2d 1428, 1450 (10th Cir. 1987) ("Admission of rebuttal evidence, particularly when the defendant 'opens the door' to the subject matter, is within the sound discretion of the district court."). Petitioner is not entitled to habeas relief on Ground Five.

### F. Ground Six: Ineffective Assistance of Trial Counsel

In Ground Six, Petitioner claims that his trial counsel denied him constitutionally effective assistance because counsel: (i) failed to object to Petitioner having been charged with Lewd Acts with a Child rather than Forcible Oral Sodomy; and (ii) failed to object

when the prosecutor asked Petitioner during cross-examination whether he had a girlfriend. Pet. at 16; Pet'r's Reply at 11-12 (citing Pet'r's Appellate Br. at 38-39).

### 1. Strickland *Standard*

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are analyzed under the familiar two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, [Petitioner] must show that counsel's performance was deficient." *See id.* at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *See id.* at 687-88 (internal quotation marks omitted). There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

With respect to the second prong of the analysis, Petitioner must show that *but for* counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

### 2. *Appeal to and Decision by the OCCA*

The OCCA rejected this claim on the merits, citing *Strickland* and *Richter* and holding:

We find in Proposition VI that counsel was not ineffective. . . . . [Petitioner] first claims counsel was ineffective for failing to object to the charge under the lewd molestation statute rather than the forcible oral sodomy statute. We found in Proposition III that Hamburger was appropriately charged with lewd molestation rather than forcible oral sodomy. As the charge was correct, counsel cannot be ineffective for failing to object to it.

Hamburger also claims that counsel should have objected when the State asked whether he had a girlfriend during cross-examination. He argues that the question was irrelevant and, had it not been asked, Hamburger would not have lied in answering and thus not been in a position to have that lie exposed on rebuttal. Defense counsel's failure to object to this question was arguably reasonable strategy. Had Hamburger's "yes" answer been true, counsel might reasonably have concluded that, if Hamburger had a girlfriend and was engaged in an appropriate relationship, jurors were less likely to believe he would molest a four-year-old. Counsel might even have chosen to argue the point. Defense counsel could not have known that Hamburger would lie in response to the question. We view strategic decisions from counsel's perspective at the time. [*Richter*, 562 U.S. at 107; *Strickland*, 466 U.S. at 689]. We will not hold counsel ineffective for making a reasonable strategic decision.

OCCA Summ. Op. at 7-8.

### 3. Discussion

Applying the law as outlined above to the facts of Petitioner's case, Petitioner cannot show that his trial counsel's failures with respect to the issues raised in Grounds Three and Five amounted to ineffective assistance of counsel.

Regarding Ground Three and counsel's failure to raise the alleged error, Petitioner has offered no authority to challenge the OCCA's holding that there was no underlying error in charging Petitioner with Lewd Acts with a Child. Further, as outlined above, Petitioner has not shown that the prosecutor's exercise of discretion in this regard resulted in a violation of any federal law. "There is a 'strong presumption' that counsel's

attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Richter*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)).

> *Strickland* does not guarantee perfect representation, only a "reasonably competent attorney." 466 U.S. at 687. Representation is constitutionally ineffective only if it "so undermined the proper functioning of the adversarial process" that the defendant was denied a fair trial. [*Id.*] Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.

*Id.* at 110 (citation omitted). Because Petitioner's claim of underlying error is meritless, Petitioner cannot show that his trial counsel's failure to raise this claim was an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 104 (internal quotation marks omitted); *see also Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002) (noting that where the petitioner's substantive habeas claims had been rejected on the merits, "separate consideration of the associated ineffective assistance claims is unnecessary").

As to Ground Five, Petitioner likewise cannot show that his trial counsel's decision to refrain from objecting to the line of questioning regarding his purported girlfriend was objectively unreasonable. *See Strickland*, 466 U.S. at 687-88. Choosing to allow questioning as to whether Petitioner had a girlfriend "was arguably reasonable strategy," as an affirmative, truthful answer—no matter what it was—would not have been prejudicial to Petitioner and may have cast him in a better light in the eyes of the jury. OCCA Summ. Op. at 8; *cf. Richter*, 562 U.S. at 106 (rejecting a finding of deficient

performance where "[i]t was at least arguable that a reasonable attorney could decide to forgo inquiry" into certain evidence under the circumstances of the case). Petitioner's argument assumes that his counsel should have anticipated that Petitioner would be untruthful on the stand, but that asks too much of the attorney and not enough of the client. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. It is only from a "distort[ed]," retrospective view that Petitioner can reasonably claim his counsel should have proceeded differently. This Court, like the OCCA, is prohibited from assessing an attorney's actions through such a lens. *See id.* at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). Petitioner cannot show that his trial counsel acted objectively unreasonably in allowing Petitioner to answer questions about a possible girlfriend.

Because Petitioner's trial counsel did not act deficiently in failing to argue these alleged errors, the undersigned need not address under *Strickland* whether Petitioner was prejudiced by his trial counsel's performance. *See id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Further, when 28 U.S.C. § 2254(d) applies, the standard is "doubly" deferential: "the question is not whether counsel's actions were reasonable. The question is whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. It follows from the above that Petitioner has not shown that the OCCA's rejection of his ineffective-assistance claim was either contrary to or an unreasonable application of *Strickland*'s governing standard. *See Strickland*, 466 U.S. at 687-95; 28 U.S.C. § 2254(d)(1); OCCA Summ. Op. at 7-8. Relief on this basis should be denied.

### G. Ground Seven: Cumulative Error

In his final argument, Petitioner claims that the cumulative effect of the trial errors raised in Grounds One through Six rendered his trial fundamentally unfair. Pet. at 16; Pet'r's Reply at 12. The OCCA denied this claim on the merits, stating that "there was no error" in Petitioner's other appellate claims and thus "no cumulative error warrants relief." OCCA Summ. Op. at 8 (citing *Parker v. State*, 216 P.3d 841, 849 (Okla. Crim. App. 2009)).

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (internal quotation marks omitted). As that language implies, "[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). Under such review a federal court also considers the impact of any constitutional claims that "have been individually

denied for insufficient prejudice." *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003).

The Tenth Circuit has recognized that a circuit split exists regarding whether cumulative-error analysis is clearly established federal law under 28 U.S.C. § 2254(d)(1). *See Cole v. Trammell*, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014). However, the Tenth Circuit also has stated that its precedent "may very well signal where our court has come down on the issue—*viz.*, that cumulative-error analysis is clearly established law." *See id.* (internal quotation marks omitted); *cf. Bland v. Sirmons*, 459 F.3d 999, 1029 (10th Cir. 2006) ("Because the OCCA concluded that the cumulative errors did not deprive [the petitioner] of a fair trial, we must defer to its ruling unless it constitutes an unreasonable application of the cumulative-error doctrine.").

Having considered *Cole*'s forecast, the undersigned concludes that the OCCA's decision on Petitioner's cumulative-error claim was not unreasonable or contrary to clearly established federal law. As outlined above, no federal constitutional errors were present in the state-court proceedings. Lacking two or more such errors to accumulate, Petitioner cannot show a violation of fundamental fairness. *See Littlejohn*, 704 F.3d at 868; *Moore*, 153 F.3d at 1113. Relief on this basis should be denied.

## RECOMMENDATION

As detailed above, it is recommended that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1) be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by June 14, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 24th day of May, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE